## DAIRY & ICE CREAM SUPPLY COMPANY, INC., v. GASTONIA ICE CREAM COMPANY.

(Filed 22 November, 1950.)

**1. Evidence § 36—**

The rule permitting the introduction in evidence of original entries recorded in regular course of business at or near the time of the transactions involved, when authenticated by one who is familiar with them and the method under which they were made, cannot be extended to permit a witness who has no personal knowledge of the transactions to testify in regard thereto from a memorandum or statement of such transactions made up by a bookkeeper under the witness' direction from such original records.

**2. Appeal and Error § 40i—**

Nonsuit will not be granted on appeal notwithstanding that the evidence relied upon by plaintiff is incompetent and was erroneously admitted, since plaintiff might have offered other proof if the incompetent evidence had been excluded at the trial.

APPEAL by defendant from *Alley, Emergency Judge,* May Term, 1950, of GASTON. New trial.

This was an action to recover the value of empty cream cans and jackets which it was alleged the defendant had failed to return to plaintiff according to contract.

Plaintiff, a Georgia corporation, was engaged in business in Atlanta in buying and selling dairy supplies and equipment, and during 1947 and 1948 shipped to the defendant a quantity of frozen cream in cans and insulated jackets by Southern Railway baggage, under agreement that the empty cans and jackets be returned to plaintiff by the same method of transportation.

Plaintiff claimed to have shipped to defendant during the period from February 1947 to April 1948, 1,528 cans and 1,113 jackets, and received back 1,129 cans and 896 jackets, leaving 399 cans and 217 jackets unreturned of the value of $5 each, amounting to $3,080. Suit was instituted to recover this amount. Plaintiff's only witness was J. M. Henson, the president of plaintiff corporation, who was permitted over objection to testify from a pencil memorandum as to the number of cans and jackets shipped and returned, together with the dates, covering 113 transactions during the period mentioned. The witness had no personal knowledge of the shipment and return of cans though the business was conducted under his general supervision. "Mr. Taylor handled the shipping and had the cream shipped. I did not handle it. . . . Attached to the duplicate order at the end of the day was a signed copy from the (railroad) baggage department that they had received that shipment." Shipments were sent to the Southern Railway by plaintiff's trucks and receipts brought

back by the drivers, and upon notice by the carrier of the arrival of returned cans and jackets the plaintiff would send trucks and pick them up. Plaintiff had some 50 customers to whom similar shipments were made and by whom cans were returned. Cans were all alike. There were other shippers of like products from Atlanta. "The knowledge I have about the cans coming into the depot would be from truck drivers that went there to pick them up . . . the shipping clerk and baggage clerk would tell me." The custom was for defendant to deliver the cans back to the same carrier for transportation by baggage. Witness had no means of knowing how many cans the defendant took to the baggage room in Gastonia. No waybills were issued, but baggage checks were used. "We kept record of our sales on a ledger record just like a ledger record of merchandise we shipped to somebody. Nothing on that page except cans and jackets that go out, and cans and jackets that come back . . . I never made those entries myself."

This witness was permitted to read to the jury from a written statement the dates of shipment, the number of cans and jackets shipped, and the number returned. "The statement that I had this morning and which I read from was made up in pencil by the bookkeeper under my direction. She and I went along and got this thing together and she wrote the things down." Witness testified that daily reports were put on his desk each day, and the records were kept in a binder in his office, and that he took them out and brought them with him.

There was verdict for plaintiff for the amount claimed, and from judgment in accord therewith defendant appealed.

*Basil L. Whitener for plaintiff, appellee.*
*Garland & Garland for defendant, appellant.*

DEVIN, J. The plaintiff undertook to establish the facts upon which it based its action by the testimony of its president, who read to the jury from a written statement purporting to show the numerous items constituting plaintiff's claim. It was testified this statement had been made up by a bookkeeper under witness' direction from the records in his office. The witness had no personal knowledge of the shipments of cans of frozen cream, except from the carrier's receipts, or of defendant's failure to return the empty containers, except from the reports placed on his desk. Defendant noted exception to this testimony, and assigns its admission as error.

The rule of evidence formerly observed by the courts limiting proof of items of business transactions to matters within the personal knowledge of a witness, has undergone revision in the light of modern business conditions and methods. *Ins. Co. v. R. R.,* 138 N.C. 42, 50 S.E. 452;

*Breneman Co. v. Cunningham,* 207 N.C. 77, 175 S.E. 829; *Chaffee v. U. S.,* 18 Wallace, 516. The impossibility of producing in court all the persons who observed, reported and recorded each individual transaction gave rise to the modification which permits the introduction of recorded entries, made in the regular course of business, at or near the time of the transaction involved, and authenticated by a witness who is familiar with them and the method under which they are made. This rule applies to original entries made in books of account in regular course by those engaged in business, when properly identified, though the witness may not have made the entries and may have had no personal knowledge of the transactions. *Flowers v. Spears,* 190 N.C. 747, 130 S.E. 710; *Peebles v. Idol,* 198 N.C. 56 (60), 150 S.E. 665; *Supply Co. v. McCurry,* 199 N.C. 799 (802), 156 S.E. 91; *Edgerton v. Perkins,* 200 N.C. 650, 158 S.E. 197; *S. v. Shipman,* 202 N.C. 518 (525), 163 S.E. 657; *S. v. Lippard,* 223 N.C. 167 (172), 25 S.E. 2d 594; Stansbury on Evidence, sec. 155; 20 A. M. Jur. 881, 892. See also *Branch v. Ayscue,* 186 N.C. 219, 119 S.E. 201; *S. v. Breece,* 206 N.C. 92, 173 S.E. 9, and *Lister v. Lister,* 222 N.C. 555 (563), 24 S.E. 2d 342.

But in the case at bar, according to the record before us, the plaintiff did not introduce the original entries made in the regular course of business at the time the transactions occurred, but offered to prove the facts about 113 transactions extending over a period of 15 months by a witness who was speaking not from personal knowledge but reading from a written statement made for him by a bookkeeper in his office. The objection to the evidence thus presented should have been sustained.

Though this was the only evidence offered by plaintiff, defendant's motion for judgment of nonsuit cannot be allowed as but for the court's ruling plaintiff might have offered other proof. *Morgan v. Benefit Society,* 167 N.C. 262, 83 S.E. 479; *Midgett v. Nelson,* 212 N.C. 41, 192 S.E. 854; *Gibbs v. Russ,* 223 N.C. 349, 26 S.E. 2d 909; *Ballard v. Ballard,* 230 N.C. 629 (635), 55 S.E. 2d 316.

For the reasons stated there must be a
New trial.